UNITED STATES v. BRENNEMAN. See Case No. 16,008.

## Case No. 14,639.

### UNITED STATES v. BRENT.

[1 Cranch, C. C. 525.] [1]

Circuit Court, District of Columbia. Dec. Term. 1808.

The law and the form of the capias ad satisfaciendum are the same in Maryland as in England. 1 Har. Ent. 642. So, also, are the forms of the pleadings. The acts of Maryland, 1768 (chapter 10), 1794 (chapter 54), and 1779 (chapter 25), do not alter the law of England.

F. S. Key, and Mr. Morsell, contra. That part of the common law of England was not adopted in Maryland, because not applicable to the circumstances of the country; there being no jails in Maryland for a long time; and even now there are some counties without public jails.

No case has been produced of such a suit in Maryland. The sheriff there is not considered liable if he has the body at the return of the capias ad satisfaciendum.

[1] [Reported by Hon. William Cranch, Chief Judge.]

The act of assembly, 1768, c. 10, has pointed out another remedy, viz. by judgment against the sheriff on his return.

## Case No. 14,640.

### UNITED STATES v. BRENT.

[17 Int. Rev. Rec. 54.]

District Court, D. Missouri. Jan., 1873.

EMBEZZLEMENT FROM MAIL — JOINDER OF OFFENCES—CIRCUMSTANTIAL EVIDENCE—"EMPLOYEE."

1. Where several letters were embezzled from the post-office by the same person, the several offences of stealing may be charged in the separate counts of the same indictment, and if separate indictments are found, the court may order them consolidated.

2. The court will protect the prisoner from being prejudiced in his defence, by the joinder of offences, and if satisfied that the defendant was so prejudiced, a new trial will be granted.

3. Where a definition of circumstantial evidence was given to the jury, it cannot be assumed that they disregarded this instruction simply because they came to a different conclusion from that expected, and a claim to set aside the verdict thus found, is asking the court to usurp the peculiar province of the jury.

4. Where the defendant is found not guilty on certain counts, but guilty of others, a new trial will not be granted for the purpose of allowing him to plead his innocence, established in the former trial in his own behalf.

5. The government is not bound to examine all persons through whose hands the mail passed. U. S. v. Whitaker [Case No. 16,672], explained.

6. One sworn in as a deputy postmaster and who handled the mail whenever he was about the post-office and felt inclined to do so, is an employee within the meaning of the law.

[Indictment for embezzlement of letters from the United States mail.]

KREKEL, District Judge. The first question raised, "the improper joinder of offences," is settled by the act of congress of 26th of February, 1853 [10 Stat. 162], which provides that "whenever there are or shall be several charges against any person or persons for the same act or transaction, or for two or more acts or transactions, connected together, or for two or more acts or transactions of the same class of crimes or offences, which may be properly joined instead of having several indictments. the whole may be joined in one indictment in separate counts; and if two or more indictments shall be found in such cases, the court may order them consolidated." Brent was charged in different counts in the

same indictment with three distinct offences—the embezzling of a letter containing two hundred and forty dollars, of one containing twenty dollars, and of another containing one hundred and eighty-nine dollars, while an employee in the Quincy post-office. The offences are alleged to have been committed within a few days of each other. While it is true that these letters came to the Quincy office from various points, the offences of stealing them are "of the same class of crimes" which the act of congress aforesaid provides. may be in separate counts of the same indictment, or if separate indictments shall be found, that the court may order them consolidated. U. S. v. O'Callahan [Case No. 15,910].

It is admitted that it is the duty of the court to protect the prisoner from being prejudiced in his defence by the joinder of offences, and if satisfied that the defendant was so prejudiced, a new trial would be granted. 1 Bish. Cr. Proc. § 204.

But, instead of being so prejudiced, the defendant in this case was, under the view taken by the court, rather benefited, for it enabled him, and he properly availed himself of the advantage, to show that others as well as himself had opportunities to steal from the mail, and by inquiring into the whole management of the Quincy post-office to throw doubt upon the whole case. To say that the defendant was prejudiced because his counsel had to devote their time and energy largely to defend him against alleged offences of which he was wholly innocent, as found by the verdict of the jury, is to ignore at least the experience of courts in the trial of causes, and the manner of arriving at verdicts by juries. It is enough to say, however, that the causes assigned, when considered in connection with the act of congress cited, are insufficient to grant a new trial.

The consideration of that part of the evidence which may be termed circumstantial, the court presented to the jury as follows: "By circumstantial evidence is meant the particular facts surrounding and connected with the case. The number of circumstances, and the directness with which they point to the main fact sought to be established, as well as their connection with each other, determines the weight to be given to them. If they all harmonize and tend in one direction they become relatively strong; when they tend in opposite directions, they become relatively weak, and may even destroy each other."

The objections made to this part of the charge are not directed so much to the law as given as to the assumed effect, or rather non-effect, it had on the jury as shown by the verdict. The points made by counsel are proper enough in themselves and should have been, as they were, presented to the jury in the argument. To say that they paid no heed to them, otherwise they would have come to a different conclusion, and that the court should therefore set aside the verdict, is asking the court to usurp the peculiar province of the jury.

It is insisted that the defendant is entitled to a new trial in order that he might avail himself of the advantage which the verdict of the jury, by finding him not guilty as to the stealing of the letters containing the twenty and the one hundred and eighty-nine dollars, might give him. The court has already said that so far from being prejudiced in having the several charges preferred in the same indictment, he was, if anything, benefited thereby. To ask that such benefit shall be used for the purpose of overthrowing the verdict rendered affords no basis for the granting of a new trial.

It was shown on the trial that one John Diamond, who could not be found, was a mail carrier who, as such, had the usual access to the mail, and it is contended that the government is bound to examine him and all others through whose hands the mail passed. The case of U. S. v. Whitaker [Case No. 16,672], is relied on to sustain this position. An examination of the case by no means supports the head notes, or the position taken here. The court in its instructions to the jury remarked that "before the letter reached Cincinnati it passed through the office at Mount Washington and one or two other offices, and in that office (Cincinnati) it passed though the hands of clerks. and there were others who had access to it." "Upon the whole," the court remarked, "unless you come to the conclusion that the defendant is guilty beyond reasonable doubt, you will acquit him." While this reference to the failure of the government to examine all persons who had access to the mail was entirely proper for the consideration of the jury in making up the verdict, it falls far short of showing that it was necessary for the government to so examine all such persons.

We may readily conceive a case in which a requirement to examine all persons who may have handled a particular mail would amount to a folly, for there may be an abundance of other and better evidence upon which a conviction may be had. In this case, among other testimony, there were confessions, entries upon the post-office books, possessions of money corresponding nearly in amount and size of bills with that stolen, and flight. To say that the government, after having made every effort to have John Diamond here, cannot ask a conviction on other and proper testimony is overstating the legal proposition involved.

The indictment in each count charges the defendant with being an employee in the Quincy post-office, as clerk. In reference to this question the court instructed the jury as follows: "In order to find the defendant guilty on any count of the indictment, you must find that he was a person employed in the Quincy post-office, as charged. A person employed in a post-office is one who on divers and sundry occasions more or less con-

nected in time, by and with the knowledge and consent of the postmaster or his deputy, receives and makes up mails for transmission, and who distributes and delivers mail matter; in other words, who has charge of the post-office. No special agreement regarding the employment need be shown. If you are satisfied from the evidence that the defendant on the 29th day of November, 1869, was an employee in the Quincy post-office you will consider him to have continued in such employ unless you are satisfied from the evidence that he was either discharged or became so disconnected from said post-office as to take away his authority to act as such employee. His own acts in connection with those of the postmaster or his deputy may be looked into, in order to ascertain the relation he sustained to the post-office as an employee. A person occasionally called to aid in receiving and distributing the mail, and whose authority ceases with the service for which he is specially called, is not a person employed in the post-office. The word 'clerk' used in the indictment simply means a subordinate employee." To this portion of the charge it is objected that it must appear that the defendant was under a valid and subsisting contract for regular as distinguished from casual employment.

The case of U. S. v. Nott [Case No. 15,900], is cited in support of the position taken, and as that case, in the particular under consideration, is analogous, I will proceed to examine it. The evidence in that case was that Nott, the defendant, before the commission of the offence, "had been a regular assistant postmaster at Akron, but a short time before had left the office. He still, however, at the request of the post-master, gave occasional instructions to the assistant in the office, who had little or no knowledge of the business." Under this evidence the court charged the jury that it must be shown that he the defendant was employed in the post-office before he can be found guilty. "The employee within the law," the court goes on to say in its instructions. "is not a casual assistant who may be in the post-office and assist in making up the mail. He must be a regular assistant employed by the postmaster, and whose duty it is to perform the various functions which appertain to the office. The prisoner, it appears, had been a regular assistant in the post office at Akron, but some time before this occurrence he had left the office and engaged in other business. He was under no obligation to act as assistant, nor did he receive a compensation. The extent of his engagement was, in the absence of the post-master, to give some instructions to the boy in the office respecting his duties, of which, being inexperienced, he was ignorant. This, we think, was not an employment within the law. We do not say that a regular written contract would be necessary, but we are of opinion that the person, to come within the law, must be a regular assistant." Judge

McLean is here speaking with reference to the Akron post-office, a full knowledge of which he must have derived from the evidence in the case. The term "regular assistant," when applied to the Akron post-office, may have presented no difficulty. It is otherwise when viewed with reference to such an office as that at Quincy. It is easy to determine in a case where the duties of the office require and engage the whole time of an employee, what is a "regular assistant." But it is only during a few hours of the twenty-four of each day that an assistant or employee is needed in most of the country post-offices. A "regular assistant" with reference to such an office may well be said to be a person who has taken the oath of office and who assists in receiving, opening, and distributing the mail from time to time, as Brent did. He was sworn in as a deputy postmaster of Quincy, on the 28th day of November, 1869, and handled the mail whenever he was about the post office and felt inclined to do so. Such a person the law, in the view of the court, treats as an employee. To give any other construction to the law would subject every post office in the country to the dangers of having persons take the oath as deputy postmasters and at intervals absent themselves, yet keep a sufficient run of the mails as to enable them to commit depredations, and, when caught, plead that they were not regular employees, in order to escape the severer penalties of the law. While I cheerfully recognize the high authority cited, the difference in the facts sufficiently accounts for the conclusion arrived at by this court. Having carefully considered the matter relied on in the motion for a new trial, and finding the same insufficient, the motion is overruled.